Per CüRIAM.
 

 William P. Chester, having the interest of a bond not' negotiable, executed by James Penny to George and Henry Miller, and by them assigned to Jacob Miller, made a contract with John Scott, now deceased, not having the bond present at the timé, and received from him property of the value of $45 8§, and executed his bond to Scott, on the 21st of August, 1800, for the said sum of $458-|, with a condition in these words: “ The condition of the above obligation is such, that if * the above bound William P. Chester will assign and make over, within two years from the date hereof, or sooner if in his power, unto the said John Scott, a certain judgment which said Chester and a certain Miller shall obtain against a certain Captain James Penny; and it is further understood, that the said Scott is to have no more than $458f out of said judgment, with legal interest from the date hereof; and likewise it is understood, that the said Scott shall have no recourse against the said Chester, in case of said Penny’s insolvency or inability to pay, after the said judgment is transferred; then the above obligation to be void, else to remain in full force.” Against James Penny, on the 25th of September, 1800, a suit was commenced, in Green County Court, in the names of George and Henry Miller, for the use of William P. Chester ; and on the 27th of October, 1801, judgment was recovered for $579.50 and cost; $502 of which transferred or assigned to John Scott, by Chester, on the execution docket; afterwards, on the 3d of March, 1802, Chester by deed transferred or assigned the same amount of the judgment to Sc.ott, and tendered the transfer to him, but he refused to receive it. Penny at that time was deemed to be insolvent. Scott commenced suit in Washington County Court against Chester, on the bond by him executed. Oyer of the condition was prayed, and the transfers before stated were separately pleaded in bar of the action. To which pleas general demurrers were filed. The court sustained them upon argument, and judgment was recovered. To reverse which judgment a writ of error was presented
 
 *275
 
 in the Superior Court of law, and at March term, 1809, the judgment of the County Court was affirmed. To be relieved against this judgment is the object of the present bill. In which . the complainant insists that, * on obtaining the judgment in the names of George and Henry Miller, for his own use, and assigning the same to Scott within two years, he has performed all he was bound to do by his agreement, and is not accountable for the solvency of Penny.
 

 If the cause depended upon the solvency of Penny, the court would be of opinion that the seeming implication of responsibility in Chester; for insolvency between the contract and the assignment would vanish, upon the ascertainment of the real cause of the provision which is supposed to furnish the implication. The assignment is generally supposed to create a contract raised by the la tv, for indemnifying the assignee against the insolvency of the obligor. And to prevent that operation of the assignment, was this part of the„agreement made. Here is an obvious and a plain cause for it, and why then create furthermore another contract, extending to a time anterior to the assignment, making by construction an additional one besides this ? The rule is that the implication must be necessary and inevitable ; one without which certain words would be inoperative, and without effect. Here is a plain and obvious meaning, productive of a plain agreement, which cannot be overlooked or laid aside, and which without necessity ought not to be enlarged. What is there to raise an anterior responsibility on the part of Chester ? Is he liable before the assignment, which concludes in itself a covenant that the assignee shall have the money ? By which we understand that he shall not be defeated by the assignor ; Mod. 118; S. R. 683; 2 Ld. Ray. 1242, 1419; 2 Be. Rep. 820. He is not liable to any such covenant before assignment, and then he is only liable by fine of the agreement contained in his bond; that is, to obtain judgment and transfer in the time limited, as the obligation contemplated. What is there to create ulterior responsibility ? Will his obligation to assign at a future * time do it ?
 
 No;
 
 for that would be by conjecture to burden him with a contract concerning which there is perfect silence, though the parties, by reducing their agreement to writing, have signified that neither is to be charged further than is there set down. Chester then is exempt from responsibility for the insolvency of
 
 *276
 
 Penny, prior to. the time of the assignment. And this brings us to the remaining part of the case, which is the judgment and assignment of a certain debt to Scott, within a certain time. The person liable to that debt, the amount of it, exceeding $458, the person having the real ownership of it, the person through whom it came to him, are all congregated in the description of the paper offered to be assigned, and agree with that which is covenanted to be assigned. Refusal to receive it is founded upon a mistake, for the judgment was not to be in the name of Chester and' Miller, as plaintiff's, but they are to obtain it. The description of the obligor is not precisely made, the Christian name is omitted and the surname relied on, because the instrument was not present; and more particularity was dangerous, for a special description not correctly made, would be far worse than a general one, which suited any one of several persons as well as the one really intended. We are satisfied that Chester did comply with his undertaking, and were it now to be decided by us in a court of law, we should say that Scott ought not to recover against him, for not obtaining and assigning in due time the judgment contracted for; but still, however reluctant we may be to decide against Chester, the rules of law must be preserved. It is better that Chester should submit to the hardship and injustice which involve him, than be the occasion of prostrating the rules of law, framed for the preservation of the best interests of the people.
 

 It is better, says a great lawyer, to suffer a particular mischief than a general inconvenience. * If we say that one against whom a judgment is given at law may come into this court and be relieved, without any other allegation than this, that the court of law decided improperly upon a matter properly before and properly cognizable by them, what will be the
 
 con
 
 sequence? We shall in all cases decide more legal questions overriding and overruling the opinions of other courts exercising common law jurisdiction, taking from them and the jurors of the country, the bulwarks of our Constitution, the determination of every case where we may think proper to interfere. Does not this prostrate the whole jurisdiction of the common law courts, with the trial by jury also ? Surely it does. And therefore this court ought not to interfere but in cases where the defense of the party for some cause cannot be considered at law, and cannot be made available there, or where some fraud is practiced, by which a common
 
 *277
 
 law court has been prevented from hearing the merits of the cause fully before it. Then the injured party, alleging that circumstance, may come, here and have a consideration of the matter which the court of law has been precluded from considering. If the circumstance be truly alleged, this court, either upon the admission or proof of that circumstance, if denied, will proceed to act upon the complaint; but if that circumstance be not alleged, or not truly alleged, then equity will say, as any other court is bound to say,
 
 sit finis litiwm,
 
 that the public quietude may be maintained. This matter being adjudicated by a court of competent jurisdiction, we will give credence to their decision and believe that it is legally correct and just. How else is strife and controversy to be terminated ? We overhaul the judgment upon the charge of error in judgment; others overhaul ours, and we again overhaul them. Here is confusion with-_ out end, disturbance without a period, and strifes interminable. It is only * to be avoided by supporting and preserving the rule we are now contemplating. Scott, if he had failed to recover at law, and had come into this court, might have been met with the objection that he was concluded and barred by the judgment at law; and why may not he say to Chester, You also are concluded and bound by the decision of law. Surely both are concluded as well as one. And both are equally barred. This is not like those cases in which we have given relief, by relaxing the rule against the entertainment of cases legally, retrievable at law. In those cases the court of law could not, and did not decide upon the fact which formed the defense, but were prevented by some untoward occurrence. Here no such occurrence intervened, the whole defense was fully and fairly submitted to the court of law, and was decided upon by it. We cannot, under such circumstances, give relief in this court but by a previous demolition of a rule of this court, of a magnitude and importance to society which commands and is entitled to the highest consideration and reverences. In the midst of our feelings on this occasion, there is one ray of consolation. It is not impossible but that in the settlement between Chester and Penny, Chester may have received some counterpoise to the losses we deplore.
 

 Dismiss the complainant's bill with costs.
 

 See the authorities collected in King’s Digest, 2401 and 9688.